**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

REYBIN ESTEBAN SALGADO DIAZ,

Petitioner,

v.

TONYA ANDREWS, et al.,

Respondents.

Case No. 1:26-cv-06203-JLT-CDB

A-Number: 201-724-916

ORDER DENYING THE PETITION FOR HABEAS CORPUS; GRANTING RESPONDENTS' MOTION TO DOSMISS; AND DENYING PETITIONER'S REQUEST FOR TEMPORARY RESTRAINING ORDER AS MOOT

(Docs. 1, 4.)

## I. INTRODUCTION

Before the Court is Reybin Esteban Salgado Diaz's request for a temporary restraining order (Doc. 4), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging her ongoing detention. (Doc. 1.) The government filed a response to the TRO and the underlying petition, asserting that Petitioner remains mandatorily detained under 8 U.S.C. § 1231 due to his administratively final order of removal. (Doc. 9.) Having carefully considered the parties' submissions, and for the reasons set forth below, the Court **DENIES** the petition for writ of habeas corpus.

## II. FACTUAL & PROCEDURAL BACKGROUND

Petitioner is a citizen of Nicaragua who entered the United States on or about February 24, 2019, when he was encountered by U.S. Border Patrol near Hildalgo, Texas. (Doc. 9-3 at 2.)

Petitioner was initially processed as an expedited removal and claimed fear of returning to Nicaragua. (*Id.*) He was then placed in removal proceedings, charged as inadmissible under 8 U.S.C. 1182(a)(6)(A)(i), and released on bond. (*Id.*) On November 21, 2019, Petitioner was arrested in Redwood City for corporal injury to a spouse, willful cruelty to a child, and robbery. (Doc. 9-1 at 7; Doc. 9-4 at 4, *See* FBI "RAP" Sheet.) The status of this arrest is unknown. On June 24, 2024, an Immigration Judge ordered Petitioner removed from the United States to Nicaragua. (Doc. 9-1 at 2-23.) Petitioner did not appeal that decision, and it became final by operation of law. (*Id.*) Although the record would suggest that Petitioner was released from immigration detention following his removal order, there is no evidence that Petitioner was formally released pursuant to an Order of Supervision .[1]

Following his final order of removal, Petitioner was arrested on July 28, 2024, for corporal injury to a spouse, assault with a deadly weapon by means likely to produce great bodily injury, and child cruelty with possible injury or death. (Doc. 9-4 at 4.) On January 16, 2025, Petitioner was convicted of Child Abuse Without the Possibility of Great Bodily Injury or Death (Cal. Penal Code § 273a(b)) and Battery of a Spouse (Cal. Penal Code § 243(e)(1)), for which he jailed for forty days, followed by three years' probation. (*Id.*) On February 27, 2025, Petitioner was convicted of Violating a Protective order (Cal. Penal Code § 273.6(a)), for which he was sentenced to 12 days in jail followed by one year of probation. (*Id.*) On June 20, 2026, Petitioner was sentenced to eighty days of jail, due to a conviction for Battery of a Spouse (Cal. Penal Code § 243(e)(1)). On July 21, 2026, immigration authorities encountered Petitioner at Maguire Correctional facility and detained him due to his final order of removal and criminal convictions. (Doc. 9-2 at 2.) Petitioner has now been detained for approximately two months at the Golden State Annex Detention Facility in McFarland, California. (Doc. 1 at 1.)

On August 17, 2026, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and motion for TRO seeking immediate release. (Docs. 1, 4.) In his habeas

---

[1] On August 24, 2026, this Court ordered Respondents to address whether Petitioner was released pursuant to an Order of Supervision following his final order of removal in June 2024. (Doc. 11.) On August 28, 2026, Respondents informed the Court that Petitioner did not receive an Order of Supervision and instead received immigration bond in 2019 following his entry at the border. (Doc. 12.)

petition, Petitioner argues that his prolonged detention violates his Due Process rights. (Doc. 1 at 7014.) In opposition, Respondents argue that Petitioner remains lawfully detained under 8 U.S.C. § 1231(a)(6) due to his final order of removal and serious criminal history. (Doc. 9 at 3.)

## III. LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A.A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## IV. DISCUSSION

### A. Detention Authority During the Removal Period

Respondents assert that Petitioner is presently detained under 8 U.S.C. §§ 1231, which governs detention procedures for individuals subject to final orders of removal. (Doc. 9 at 1.) Section 1231(a)(1)(A) establishes that "[e]xcept as otherwise provided in this section," individuals with a final removal order "shall [be] remove[d] ... from the United States within a period of 90 days." The removal period begins on the latest of three dates: (1) the date the order of removal becomes "administratively final"; (2) the date of the final order of a reviewing court which stayed the removal; or (3) the date on which the noncitizen is released from non-immigration detention or confinement. 8 U.S.C. § 1231(a)(1)(B). During the removal period, detention is mandatory. 8 U.S.C. § 1231(a)(2). Here, Petitioner's removal order became administratively final in 2024, triggering the ninety-day removal period which has long since expired. As such, Petitioner's detention cannot be governed by 8 U.S.C. §§ 1231(a)(1), (2).[2]

///

---

[2] In their motion to dismiss, Respondents incorrectly assert that the ninety-day removal period began on the date Petitioner was taken into custody, as opposed to the date that his order of removal became administratively final. (Doc. 9 at 3) ("As of this filing, Petitioner's detention has not lasted even one month; therefore, he is still within the ninety-day removal period established in 8 U.S.C. § 1231, and well within the presumptively reasonable six-month period established in *Zadvydas*, 533 U.S. 678, at 701 (2001).").

**B. Detention Authority After the Expiration of the Removal Period**

After the 90-day period, detention is not mandatory. If a noncitizen subject to a final order of removal is not removed within the 90-day removal period, two subsections of § 1231(a) become potentially applicable. Section 1231(a)(6) provides that noncitizens subject to final removal orders may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in § 1231(a)(3). Three classes of persons "may be detained beyond the removal period" under § 1231(a)(6): noncitizens who are (1) inadmissible under 8 U.S.C. § 1182, (2) removable as the result of violations of certain status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy, or (3) determined by the Attorney General to be a risk to the community, or to be unlikely to comply with the order of removal. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 528–29 (2021). § 1231(a)(6); *see also* 8 C.F.R. § 241.4 (setting out requirements for periodic custody reviews after the 90-day removal period has expired). Post-removal-period detention, however, is limited to "a period reasonably necessary to bring about [the noncitizen's] removal from the United States" and "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).

Respondents maintain that Petitioner is lawfully detained pursuant to § 1231(a)(6) given that he is an "inadmissible non-citizen" with a "history of domestic violence and violating protective orders, as well as arrests for other significant crimes." (Doc. 9 at 3.) Moreover, Respondents assert that Petitioner's freedom from detention post-removal order was based upon a 2019 bond order, which DHS cancelled in July 2026 prior to Petitioner's most recent detention. (Doc. 12 at 1.) Under these circumstances, the Court finds that 8 U.S.C. § 1231(a)(6) gives ICE statutory authority to detain Petitioner. *See, e.g.*, *Piao v. Lyons*, No. 25 Civ. 1725, 2025 WL 3046783, at *2 (E.D. Va. Oct. 31, 2025) ("[T]he Court concludes, as [have] other courts, that the government's failure to detain the Petitioner during the removal period or immediately thereafter does not eliminate the [g]overnment's ability to detain Petitioner [without notice] for the purpose of enforcing that removal order at this time [i.e., years later]").

Furthermore, Petitioner is now imminently removable from the United States, and the

only thing preventing his removal is this Court's order.[3] As one district court has indicated, detention pursuant to imminent removal "might reasonably be thought of as implicit in the concept of 'removal' itself." *Diallo v. Joyce*, 817 F. Supp. 3d 202, 208 (S.D.N.Y. 2025). Because the Court lacks jurisdiction to interfere with the implementation of a final, fully executable order of removal, 8 U.S.C. § 1252(g) ("no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to . . . execute removal orders against any alien under this chapter"), the Court concludes it cannot offer habeas relief here and that Petition must be **DENIED**.

## V. CONCLUSION AND ORDER

1. Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.
2. Petitioner's Motion for Temporary Restraining Order (Doc. 4) is **DENIED** as moot.
3. The Court's order precluding Petitioner's removal from this district and the country (Doc. 7) is **WITHDRAWN**.
4. Clerk of the Court is directed to **CLOSE THE CASE**.

IT IS SO ORDERED.

Dated: _August 31, 2026_

UNITED STATES DISTRICT JUDGE

[3] That does not mean, however, that a final order of removal allows the government to detain an inadmissible noncitizen indefinitely. In *Zadvydas*, the Supreme Court interpreted § 1231(a)(6) to limit post-removal order detention to a period "reasonably necessary to bring about that alien's removal from the United States." *Id*. at 689. The Court found that a post-removal order detention period of six-months was "presumptively reasonable"; however, beyond those six months, if removal no longer is reasonably foreseeable, continued detention becomes unauthorized. *Id*. at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Petitioner has been detained for 41 days. This is well "within the 'presumptively reasonable' six-month period. *See Alfaro Lara v. Warden, California City Correction Ctr*., No. 1:26-CV-01986-JLT-FJS, 2026 WL 1714007 (E.D. Cal. June 12, 2026).